1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

GILBERTO CARRILLO,                      )
                                        )
            Plaintiff,                   )        2:12-cv-2165-JCM-VCF
                                        )
vs.                                     )
                                        )        **ORDER**
DOUGLAS GILLESPIE, *et al.*,             )
                                        )
            Defendants.                  )
_____/

        Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections, has filed
a complaint in state court, which defendants have removed.  This matter comes before the court
regarding several motions, as well as the screening of the amended complaint.

**I.  Procedural History**

        Plaintiff, a Nevada state prisoner, filed a *pro se* civil rights complaint on September 5, 2012,
in the Eighth Judicial District Court of the State of Nevada, Clark County.  Defendant Gillespie was
served with the complaint on November 30, 2012, and defendant Clark County Detention Center was
served on December 11, 2012.  Defendants filed a notice of removal in this court on December 19,
2012.  (ECF No. 1).  "The district courts shall have original jurisdiction of all civil actions under the
Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff has alleged a
violation of his rights under the U.S. Constitution.  Defendants appropriately removed the action to

1  this court pursuant to 28 U.S.C. § 1441, as this court has original jurisdiction over the claims raised

2  in the complaint.

3        On December 27, 2012, defendants Clark County Detention Center and defendant Gillespie

4  filed separate motions to dismiss the complaint.  (ECF Nos. 5 & 6).  On March 26, 2013, plaintiff

5  filed a motion to file a first amended complaint, along with a proposed first amended complaint.

6  (ECF Nos. 38 & 38-1).  A party may amend his pleading once as a matter of course any time before a

7  responsive pleading has been filed; otherwise, he may amend only by leave of court or by written

8  consent of the adverse party.  Fed. R. Civ. P. 15(a).  Respondents filed two motions to dismiss before

9  plaintiff sought leave to amend, and those motion are not responsive pleadings.  *Morrison v.*

10 *Mahoney*, 399 F.3d 1042, 1045-47 (9th Cir. 2005).  Plaintiff's motion to file the amended complaint

11 is granted and this action shall proceed on the amended complaint.  Defendants' motions to dismiss

12 are denied as moot.  The court must now screen the amended complaint.

13 **II.  Screening Standard**

14       Federal courts must conduct a preliminary screening in any case in which a prisoner seeks

15 redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

16 § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that

17 are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary

18 relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se*

19 pleadings, however, must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696,

20 699 (9th Cir. 1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

21 elements: (1) that a right secured by the Constitution or laws of the United States was violated, and

22 (2) that the alleged violation was committed by a person acting under color of state law.  *See West v.*

23 *Atkins*, 487 U.S. 42, 48 (1988).

24       In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation

25 Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of

26 poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief

may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28

U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be

granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same

standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.

When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend

the complaint with directions as to curing its deficiencies, unless it is clear from the face of the

complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70

F.3d. 1103, 1106 (9th Cir. 1995).

 Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v.

Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a

claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim

that would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In

making this determination, the court takes as true all allegations of material fact stated in the

complaint, and the court construes them in the light most favorable to the plaintiff.  *See Warshaw v.

Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less

stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9

(1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  While the standard under Rule

12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels

and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation

of the elements of a cause of action is insufficient.  *Id.; see Papasan v. Allain*, 478 U.S. 265, 286

(1986).

 Additionally, a reviewing court should "begin by identifying pleadings [allegations] that,

because they are no more than mere conclusions, are not entitled to the assumption of truth."

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of

a complaint, they must be supported with factual allegations." *Id.*  "When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly

1    give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim

2    for relief [is] a context-specific task that requires the reviewing court to draw on its judicial

3    experience and common sense." *Id.*

4          Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if

5    the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on

6    legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or

7    claims of infringement of a legal interest which clearly does not exist), as well as claims based on

8    fanciful factual allegations (e.g., fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S.

9    319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

10   **III.  Screening of the Amended Complaint**

11         Plaintiff brings action against the following: Sergeant K. Bussell, of the Las Vegas

12   Metropolitan Police Department (LVMPD); R. Christopherson, LVMPD police officer; Dwain

13   Cotwright, High Desert State Prison (HDSP) transportation officer; LVMPD nurse "Daryl"; Raul

14   Diaz, HDSP transportation officer; J. Ferry, LVMPD police officer; Douglas Gillespie, Clark County

15   sheriff; Francis J. Kim, HDSP property room sergeant; D. Neven, HDSP warden; Sgt. Quinn, HDSP

16   property room officer; M. Razo, LVMPD police officer; and A. Ritz, HDSP case worker.

17         Plaintiff alleges that on June 13, 2012, he was transported from HDSP to "CCDC/the

18   Regional Justice Center Holding" area for a court hearing.  Plaintiff alleges that he was on protective

19   custody status as a non-active former Sureno gang member, and that he told certain defendants that

20   he should not be placed in a cell with current Sureno gang member Milo Hicks, who was also

21   present at CCDC at the same time as plaintiff.  Plaintiff alleges that in the holding area, a physical

22   altercation occurred between himself and inmate Milo Hicks.  Plaintiff alleges that in connection

23   with the altercation, he was subjected to excessive force and other violations of his rights.  Plaintiff

24   seeks declaratory, injunctive, and monetary relief in this action.

25   / / / / / / / / / / /

26   / / / / / / / / / /

**A. Count I**

**1. Deliberate Indifference to Safety**

In count I, plaintiff alleges that on June 13, 2012, during preparation for transport from High Desert State Prison to the Clark County Detention Center, he told property room officer Quinn that he had issues with inmate Milo Hicks due to gang affiliation. (Compl., at p. 7). Plaintiff alleges that defendant Quinn notified NDOC transportation officer Raul Diaz of conflicting issues between plaintiff and inmate Milo Hicks. Plaintiff alleges that he told defendant Diaz that he had a problem with inmate Hicks, and "Diaz then informed Carrillo [plaintiff] not to worry." (*Id.*). Plaintiff alleges that he was transported to CCDC in the same van as inmate Hicks. (*Id.*). Upon arriving at CCDC/Regional Justice Center Holding, plaintiff reiterated his concerns regarding inmate Hicks to defendants Diaz and Cotwright, both HDSP transportation officers, stating "you can't put me in a cell with him." (*Id.*, at pp. 7-8). Plaintiff contends that he explained to defendant Diaz that he should not be put in the same holding cell as inmate Milo Hicks, because inmate Hicks would likely retaliate against him for dropping out of the gang. (*Id.*, at p. 8). While he was in leg, wrist, and belly chain restraints, plaintiff was placed in a holding cell with other prisoners awaiting hearings, including inmate Milo Hicks. (*Id.*). Plaintiff alleges that inmate Milo Hicks physically assaulted him. (*Id.*).

Pursuant to the Eighth Amendment, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate safety." *Farmer*, 511 U.S. at 837. In the instant case, plaintiff alleges that defendants Quinn, Diaz, and Cotwright knew that plaintiff had conflicting issues with inmate Milo Hicks concerning gang affiliation and that contact between the two inmates would create a serious safety risk to plaintiff. As to defendant Quinn, a property room officer at HDSP, plaintiff alleges that Quinn notified defendant Diaz of the conflict, but defendant Quinn had

no further involvement.  Plaintiff fails to state a claim as to defendant Quinn.  However, as to defendants Diaz and Cotwright, plaintiff alleges that these two defendants, knowing of the conflicting gang-related issues between plaintiff and inmate Milo Hicks, disregarded the risk to his safety by allowing plaintiff to be placed in a holding cell with inmate Hicks.  Plaintiff states a colorable claim for deliberate indifference to safety against defendants Diaz and Cotwright, but not as to defendant Quinn.

### 2. Excessive Force

When the physical altercation between plaintiff and inmate Milo Hicks occurred in the holding cell, LVMPD officers Bussell, Christopherson, Razo, and Ferry responded to the incident, along with HDSP officers Diaz and Cotwright.  (Complaint, at p. 9).  Plaintiff was taken to a wall on the left side of the holding cell by two LVMPD officers, the identities of whom plaintiff does not know.  (*Id.*).  Plaintiff alleges that two LVMPD officers held his arms and defendant Bussell applied pressure to the "pressure points of [plaintiff's] jaw . . . in an attempt to break it or force [plaintiff's] mouth open."  (*Id.*, at p. 10).  Plaintiff alleges that defendant Bussell then "slammed [plaintiff's] head into the wall, followed by pulling his hair and head backward."  (*Id.*).  Plaintiff alleges that the two other LVMPD officers holding his arms told defendant Bussell to desist in his use of force on plaintiff.  (*Id.*).

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).  In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response.  *Hudson*, 503 U.S. at 7.  Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison

official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes

from constitutional recognition *de minimus* uses of physical force. *Id.* at 9-10.   While the courts must

be deferential when reviewing the necessity of force (*Norwood v. Vance*, 591 F.3d 1062 1066-67 (9th

Cir. 2010), *cert denied* 131 S. Ct. 1465), whether the use of force was unconstitutionally excessive

usually involves an issue of fact.   *See, e.g., Lolli v. County of Orange*, 351 F.3d 410, 415-16 (9th Cir.

2003) (citations omitted) (in an excessive force case brought by a pretrial detainee under the Fourth

Amendment, the court stated, "summary judgment or judgment as a matter of law in excessive force

cases should be granted sparingly").

In this case, plaintiff alleges that while he was in restraints and was not resisting, defendant

Bussell injured his jaw, slammed his head against a wall, and pulled his hair and head backwards.

Plaintiff alleges that there was no legitimate need for this use of force, given the fact that he was in

full restrains and was not resisting.   As such, plaintiff states a colorable claim for the use of

excessive force against defendant Bussell.   However, plaintiff fails to state a claim for excessive

force against defendants Christopherson, Razo, Ferry, Diaz, and Cotwright.

### 3.  Deliberate Indifference to Medical Needs

Plaintiff alleges that after the altercation, he was treated by "nurse Daryl," for his injuries.

(Compl., at p. 11).   Plaintiff alleges that although his injuries were treated at CCDC, his injuries

were "disregarded by HDSP officials and nursing staff in [a] ploy to diminish and otherwise

diminuate [sic] their severity and protracted extent."  (*Id.*).   Plaintiff later filed a grievance regarding

this and defendant Ritz denied his grievance – and that this illustrates "a pattern of deliberate

indifference and disregard qua conspiracy and coverup by HDSP and LVMPD officials."  (*Id.*).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual

punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical

needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   The "deliberate indifference" standard involves

an objective and a subjective prong.   First, the alleged deprivation must be, in objective terms,

"sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501

7

U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer v. Brennan*, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.*  In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence, or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), *citing Estelle*, 429 U.S. at 105-06.

Plaintiff has alleged that defendant Daryl treated his injuries at CCDC.  There is no allegation that defendant Daryl was deliberately indifferent to his medical needs, but rather, the opposite. Plaintiff fails to state a claim against defendant Daryl.  As to the allegation that "HDSP officials and nursing staff" disregarded or failed to treat his injuries, plaintiff has not specified any particular defendant at HDSP who knew of his need for medical treatment and disregarded that need.  As to the allegation that defendant Ritz denied his grievance and that this illustrates "a pattern of deliberate indifference and disregard qua conspiracy and coverup by HDSP and LVMPD officials," this is insufficient to state a claim for deliberate indifference to medical needs.  Although defendant Ritz denied plaintiff's grievance, there is no allegation that defendant Ritz knew of a then-existing need for treatment of a serious medical condition and disregarded that need.  Plaintiff fails to state a claim for deliberate indifference to medical needs against defendant Daryl, Ritz, or any other named defendant.

### 4. Defendant Kim

Plaintiff alleges that defendant Kim, the afternoon property room officer at HDSP "is also responsible for assisting intake/return processing." (Compl., at p. 11).  Plaintiff alleges that defendant Kim was not present at either his departure or his return, "however, may have been briefed by other officers and or Diaz and Cotwright themselves – or may have directly heard something

1  relevant [to] the incident which [is] materially germane [to] the case as a whole." (*Id.*, at pp. 11-12).

2  Plaintiff's allegations against defendant Kim fail to state a claim for violation of his rights.  The fact

3  that defendant Kim may have information regarding the events of June 13, 2012 is insufficient to

4  state a claim for violation of plaintiff's constitutional rights.

5                 **5.  Supervisory Liability**

6       Plaintiff alleges that defendant Neven, warden of HDSP "is responsible for the daily

7  administrative affairs of the facility and security issues pertaining to prisoners at all facets of the

8  facilities operations, including prisoner's grievances and conducting investigations into grievances

9  involving issues pertaining to security issues and or any unitary subordinate official misconduct,

10  disciplining, etc., involving all prisoners... in the custody of HDSP." (Compl., at p. 12).  Plaintiff

11  similarly alleges that defendant Gillespie, sheriff of Clark County, is "responsible for the daily

12  administration of the Clark County Detention Center/Las Vegas Metro Police Department . . . [the]

13  custodial safety, security, health and welfare of those thereinof [sic] housed or confined, grievance

14  review, and any officer misconduct review, incident review, review and assurances of grievance

15  policy and administrative remedies and procedure thus related for purposes of his charges' custodial

16  safety, security, health and welfare of those housed or confined [at the Clark County Detention

17  Facility].  (*Id.*, at p. 12).  Plaintiff alleges that, as to defendants Neven and Gillespie, "the failure to

18  do so . . . may constitute prima facie evidence of deliberate indifference and disregard to the safety,

19  security, health and welfare of those in their administrative custody, care, and control . . .

20  establishing thus a pattern, policy, procedure, custom, usage, reliance, unitary or collateral blind eye

21  ratification by alter ego transferred intent, for purposes of surreptitious retaliation and or punishment

22  contrary to state and or federal law." (*Id.*, at pp. 12-13).

23       Supervisory personnel are generally not liable under section 1983 for the actions of their

24  employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a

25  supervisorial position, the causal link between him and the claimed constitutional violation must be

26  specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,

1    589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979).  A plaintiff can establish the

2    necessary causal connection for supervisory liability by alleging that the defendant "set[] in motion a

3    series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which the

4    supervisor knew or reasonably should have known would cause others to inflict a constitutional

5    injury."  *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal quotations, original

6    alterations, and citations omitted).  Thus, "[a] supervisor can be liable in his individual capacity for

7    his own culpable action or inaction in the training, supervision, or control of his subordinates; for his

8    acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous

9    indifference to the rights of others."  *Id*. at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087,

10   1093 (9th Cir. 1998)); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).

11          Although the United States Supreme Court has rejected the idea that "knowledge and

12   acquiescence" of subordinates' conduct is enough to hold supervisory officials liable under section

13   1983 where a claim is one of purposeful and unlawful discrimination, *Ashcroft v. Iqbal*, 556 U.S.

14   662, 677-684 (2009), the Ninth Circuit Court of Appeals has held that where the applicable

15   constitutional standard is deliberate indifference, "a plaintiff may state a claim against a supervisory

16   for deliberate indifference based upon the supervisor's knowledge of and acquiescence in

17   unconstitutional conduct by his or her subordinates."  *Starr*, 652 F.3d at 1205.  "Even under a

18   deliberate indifference theory of individual liability, the [p]laintiffs must still allege sufficient facts

19   to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional

20   conduct of his subordinates."  *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (citing *Star v.

21   Baca*, 652 F.3d at 1206-07).  In the instant case, plaintiff states a colorable Eighth Amendment claim

22   against defendants Neven and Gillespie based on their alleged knowledge of and acquiescence in the

23   deliberate indifference to plaintiff's safety and the use of excessive force.

24          **B.  Counts II and III**

25          In counts II and III, plaintiff repeats his allegation that, on June 13, 2012, while he was in

26   restraints and was held by two LVMPD officers, defendant Bussell tried to pry open or break his

10

1   jaw, slammed his head into a concrete wall, then grabbed plaintiff's hair and pulled it back

2   forcefully.  (Compl., at pp. 14-15).  These claims are addressed in this order, under Count I.

3   **IV.  Conclusion**

4       **IT IS THEREFORE ORDERED** that plaintiff's motion to amend (ECF No. 38) is

5   **GRANTED.**  The clerk of court **SHALL FILE** the amended complaint (ECF No. 38-1).

6       **IT IS FURTHER ORDERED** that the clerk of court **SHALL MODIFY** the docket in this

7   case to reflect the defendants named in the amended complaint.

8       **IT IS FURTHER ORDERED** that defendants' motions to dismiss (ECF Nos. 5 & 6) are

9   **DENIED AS MOOT.**

10      **IT IS FURTHER ORDERED** that petitioner's motion for an extension of time (ECF No.

11  15) to respond to the motion to dismiss is **DENIED AS MOOT.**

12      **IT IS FURTHER ORDERED** that the complaint **SHALL PROCEED** on the following

13  claims in the amended complaint:  (1)  Plaintiff's Eighth Amendment deliberate indifference to

14  safety claim against defendants Diaz and Cotwright; (2) plaintiff's excessive force claim against

15  defendant Bussell; and (3) plaintiff's claims against defendants Neven and Gillespie.

16      **IT IS FURTHER ORDERED** that defendants Quinn, Christopherson, Razo, Ferry, Daryl,

17  Ritz, and Kim are **DISMISSED WITH PREJUDICE** from this action.

18      **IT IS FURTHER ORDERED** that the defendants that have been served in this action shall

19  file and serve an answer or other response to the amended complaint within **forty-five (45) days** of

20  the date of entry of this order.

21      **IT IS FURTHER ORDERED** that the clerk shall electronically serve a copy of this order,

22  along with a copy of the amended complaint (ECF No. 38-1), on the Office of the Attorney General

23  of the State of Nevada, c/o Kat Howe, supervising legal secretary, 100 North Carson St., Carson

24  City, NV 89701-4717.  The attorney general shall advise the court within **twenty (20) days** of the

25  date of entry of this order whether they can accept service of process for the named defendants.  If

26  the attorney general accepts service of process for any of the defendants, such defendant(s) shall file

1    and serve an answer or other response to the amended complaint within **forty-five (45) days** of the

2    date of the notice of acceptance of service.

3        **IT IS FURTHER ORDERED** that if the attorney general does not accept service of process

4    for any named defendant(s), then plaintiff must file a motion identifying the unserved defendant(s),

5    requesting issuance of summons for the unserved defendant(s), and specifying the full name(s) and

6    address(es) of the unserved defendant(s).  Such defendant(s) shall file and serve an answer or other

7    response to the amended complaint within **thirty (30) days** of the date of the notice of acceptance of

8    service.

9        Dated this ___14th___ day of May, 2013.

10

11                                    _____

12                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26