# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Gilberto Carrillo,

　　　　Plaintiff

　　v.

Douglas Gillespie et al.,

　　　　Defendants

Case No.: 2:12-cv-02165-JAD-VCF

**Order Granting Summary Judgment on Remaining Claims
[#174]**

Pro se prisoner plaintiff Gilberto Carrillo claims he was beaten by Las Vegas Metropolitan Police Department (LVMPD) Sergeant Scott Zavsza in a holding cell at the Regional Justice Center (RJC) while awaiting a habeas hearing.  After screening and extensive motion practice, Carrillo is left with two claims: an excessive-force claim against Zavsza and a supervisor-liability claim against then-Sheriff Douglas Gillespie.  Zavsza and Gillespie move for summary judgment on these claims based on the complete absence of evidence to support the claims against them and Carrillo's failure to exhaust the prison's grievance procedures before bringing suit.  Carrillo does not refute the authenticated evidence that Zavsza was not at the RJC on the day of the incident and thus cannot be responsible for the alleged attack; he also has not demonstrated any evidentiary basis upon which Sheriff Gillespie can be held liable for the incident in any capacity.  Accordingly, I grant the motion for summary judgment.

## Background

On June 13, 2012, High Desert State Prison (HDSP) inmate Gilberto Carrillo was transported to the Regional Justice Center for a hearing in his state habeas corpus matter.[1]  He contends that he is a Sureño street-gang dropout who had previous "issues" with rival gang member Milo Hicks, who

---

[1] Doc. 155 at 3–4.

1

was also transported to court that day.  Carrillo alleges he advised his transporters Raul Diaz and Dwain Cotwright and the LVMPD officers at the RJC that he could not be celled with Hicks, but they ignored his concerns and placed both men in the same holding cell.[2]  Hicks assaulted Carrillo, Diaz and Cotwright quickly separated them, and Carrillo claims that while his arms were held by two other "LVMPD officials," Sergeant Zavsza tried to break Carrillo's jaw, slammed his head into the wall, and pulled his hair.[3]

Carrillo sued a number of individuals and first identified Sgt. K. Bussell as his LVMPD assailant.  He dismissed the claim against Sgt. Bussell, however, after learning that she is a woman and not the man he believes employed excessive force on him at the RJC.[4]  He sued HDSP warden Dwight Neven and LVMPD Sheriff Gillespie based on an alleged "policy or custom to impunitively punish dropout gang members as penalty," demonstrating a deliberate indifference to inmates' safety, security, health, and welfare.[5]  After initial screening and several dispositive motions, all that remained of Carrillo's case were individual- and official-capacity claims against Sheriff Gillespie, and Carrillo's opportunity to amend his complaint to replace Bussell with the male LVMPD officer he believed assaulted him.  Based on a list of LVMPD employees provided by defendants during discovery,[6] Carrillo amended his complaint to substitute Sgt. Zavsza as his new target defendant.

Zavsza and Gillespie now move for summary judgment on all remaining claims.[7]  After two extensions, Carrillo filed his response late.[8]  Although pro se defendants are not excused from the

---

[2] *Id*. at 4–5.

[3] *Id*. at 6–7.

[4] *See* Doc. 149 at 4–8.

[5] Doc. 155 at 9–12.

[6] Doc. 174 at 12.

[7] Carrillo received the notice required under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1997), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).  *See* Doc. 175.

[8] Docs. 181–85. No reply was filed.

requirement that all litigants before this court follow the court's rules and orders regardless of whether they are represented by counsel, I consider Carrillo's late response in the interest of justice.[9]

### Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[11]  If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[12]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[13]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[14]

### A.    The Evidentiary Record on Summary Judgment

Because the summary-judgment procedure is the pretrial functional equivalent of a directed-

---

[9] I find this motion appropriate for resolution without oral argument.  L.R. 78-2.

[10] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[11] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[12] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[14] *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

3

verdict motion, it requires the same caliber of evidence that would be admitted at trial.[15]  The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[16]  Authenticity must be affirmatively shown: to admit a document that supports or opposes summary judgment, the proponent must offer "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Merely attaching evidence is insufficient.[17]  If a party fails to authenticate evidence in support of its position, I may exclude it.  Documents may be authenticated in two ways: (1) through personal knowledge by a party who attests that the document is what it purports,[18] or (2) in any other manner allowed by Federal Rules of Evidence 901(b) (which provides ten ways to authenticate) or 902 (which allows certain self-authenticating documents that "require no extrinsic evidence of authenticity").[19]

The defendants submit 18 exhibits in support of their motion for summary judgment. Exhibits A, B, and C are registers of actions printed from www.clarkcountycourts.us,[20] which is the website for Nevada's Eighth Judicial District Court and the Las Vegas Township Justice Court.[21] These exhibits reflect state criminal actions filed against Carrillo, provide dispositions of those charges, and are essentially printouts of state-court dockets.  Judicial notice does not authenticate an

---

[15] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

[16] Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

[17] *Orr*, 285 F.3d at 733 (citations omitted).

[18] *Id.* at 773–74 ("Unauthenticated documents cannot be considered in a motion for summary judgment").

[19] *See* Fed. R. Evid. 902 (discussing domestic public documents that are sealed and signed or signed and certified, foreign public documents, certified copies of public records, official publications, newspapers and periodicals, trade inscriptions and the like, acknowledged or notarized documents, commercial paper and related documents, presumptions under a federal statute, and certified domestic or foreign records of a regularly conducted activity as twelve types of self-authenticating evidence).

[20] Docs. 174-1, 174-2, 174-3.

[21] *See* About Clark County Courts, Clark County Courts, http://www.clarkcountycourts.us/about.html (last visited Mar. 23, 2015).

4

exhibit, but it may allow the court to make limited use of one.  Under Federal Rule of Evidence 201,

courts may take judicial notice of any fact "not subject to reasonable dispute in that it is either (1)

generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

ready determination by resort to sources whose accuracy cannot reasonably be questioned."[22]

Judicial notice is properly taken of proceedings in other courts, in and out of the federal system,

when those proceedings relate to matters at issue.[23]  Because the information contained in these

documents is capable of ready and accurate determination by a source whose accuracy cannot be

reasonably questioned, I take judicial notice of Exhibits A, B, and C, but I do not rely on them in

analyzing disputed facts.[24]

Exhibits D, E, F, and H are civilian and employee statements taken by LVMPD that include

the certification: "I do hereby certify that I have truly and correctly transcribed the sound recording in

the above entitled matter."[25]  A typed name appears after the certification.[26]  There is no actual

signature or authenticating affidavit.  And there is no under-penalty-of-perjury language for either the

transcriber or the witness.  Unsworn declarations must comport with 28 U.S.C. § 1746(2), which

requires the following language in substantially this form: "I declare (or certify, verify, or state)

under penalty of perjury that the foregoing is true and correct.  Executed on (date).  (Signature)."

These documents lack this guarantee of truthfulness.  Although they are also similar to transcripts of

deposition testimony, these documents similarly fail to meet the authentication requirements for

---

[22] Fed. R. Evid. 201(b).

[23] *Biggs v. Terhune*, 334 F.3d 910, 916 n.3 (9th Cir. 2003), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *see also Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of state appellate court opinion and the parties' briefs filed therein and in the trial court to determine whether an issue was actually litigated and necessarily decided in the state court for issue preclusion purposes).

[24] Even if I did rely on these exhibits to make factual determinations, it would have no impact on the outcome of this decision.  The charges brought against Carrillo, his ultimate convictions, and the procedural unfolding of his state criminal case have no bearing on who should prevail here.

[25] Doc. 174-4 at 22; Doc. 174-5 at 5; Doc. 174-6 at 13; Doc. 174-8 at 11.

[26] Doc. 174-4 at 22; Doc. 174-5 at 5; Doc. 174-6 at 13; Doc. 174-8 at 11.

transcripts.  To authenticate a deposition transcript, the party must attach the deposition cover page with the names of the deponent and action.[27]  Every deposition transcript and extract must include a signed reporter's certification.[28]  I thus exercise my discretion to not consider these statements in support of the motion for summary judgment.

Exhibit G is a notarized affidavit by defendant Scott Zavsza, which I do consider.[29]

Exhibit I is an LVMPD officer's report.[30]  Public-records copies are self-authenticating when certified as correct by "the custodian or another person authorized."[31]  Because this exhibit is unsupported by a personal-knowledge affidavit, contains hearsay, and lacks any other authenticating foundation, I exercise my discretion to exclude it.

Exhibit J purports to be a Nevada Department of Corrections medical report,[32] and Exhibit N appears to be the NDOC Inmate Grievance Procedure,[33] but the defendants offer nothing to authenticate either of these documents.  The Ninth Circuit explained in *Orr v. Bank of America* that a document may be authenticated through an affidavit signed by a person with personal knowledge of the document, like the drafter, the signer, or the custodian of a document kept in the ordinary course of a business.[34]  The defendants do not support their introduction of these documents with any

---

[27] *Id.* at 774

[28] *Id.* (recognizing that "[i]t is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'  Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition.").

[29] Doc. 174-7.

[30] Doc. 174-9 at 2.

[31] Fed. R. Evid. 902(4).

[32] Doc. 174-10.

[33] Doc. 174-14.

[34] *See Orr*, 285 F.3d at 773–74 ("documents authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'"); *see also* Fed. R. Civ. Pro. 30(f)(1) (requiring that depositions include reporters' certifications); Fed. R. Civ. P. 56(c)(4)

6

1  affidavit or other foundation, so I exercise my discretion to exclude them.

2          Exhibits K and L are LVMPD Citizen Review Board complaint forms that Carrillo

3  submitted.[35]  In both forms, he signs a preprinted "sworn statement of complainant," which states

4  "under penalty of perjury" that "all information provided in this complaint is true and correct."[36]

5  These complaints comply with 28 U.S.C. § 1746(2), and I consider them.

6          Exhibits M and Q are responses to discovery requests that Carrillo submitted to the

7  defendants.[37]  At the end of each document, Carrillo has signed "under penalty of perjury" that the

8  foregoing facts are "true and correct" to the best of his knowledge.[38]  These documents also satisfy

9  the requirements of Section 1746, and I consider them.

10          Exhibit O contains a declaration by Kimie Beverly, an NDOC legal researcher, and is signed

11  under penalty of perjury.[39]  She testifies that the enclosed Inmate Issue History report is accurate and

12  that she personally printed it from an NDOC database.[40]  I therefore consider the grievance-history

13  report that she provides, which covers Carrillo's grievances from June 13, 2013, to June 25, 2013.[41]

14          Exhibit P contains a declaration by Kerry Goodgame that is unsigned, contains no under-

15  penalty-of-perjury language, and is not notarized.[42]  I exercise my discretion to exclude both the

16  unsworn declaration and the documents it purports to authenticate.

17  _____

18  ("An affidavit or declaration used to support or oppose a motion must be made on personal
19  knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant
   is competent to testify on the matters stated.").

20          [35] Doc. 174-11; Doc. 174-12.

21          [36] Doc. 174-11 at 3; Doc. 174-12 at 3.

22          [37] Doc. 174-13; Doc. 174-17.

23          [38]  Doc. 174-13 at 8; Doc. 174-17 at 12.

24          [39] Doc. 174-15 at 1.

25          [40] *Id.*

26          [41] *Id.*

27          [42] Doc. 174-16 at 2.

28                                                    7

1    Exhibit R contains a daily-assignments sheet for LVMPD employees that Sgt. Zavsza

2 authenticates in his sworn affidavit, and I consider it.[43]

3    Plaintiff offers two exhibits for consideration.  The first is Carrillo's amended complaint.[44]

4 At the end, he "declare[s] under penalty of perjury under the laws of the United States of America

5 that the foregoing is true and correct."[45]  I consider the complaint as part of the admissible record to

6 the extent it contains factual assertions because it is akin to a sworn declaration.[46]

7    Carrillo also attaches a declaration prepared by inmate Jason Perez.[47]  Perez attests he was

8 transported with Carrillo and Hicks and witnessed the altercation that underlies this litigation.[48]  He

9 signs that his declaration "is true and correct under penalty of perjury."[49]  I therefore consider Perez's

10 statement.

11    With this evidentiary foundation, I consider the parties' arguments on their merits.

12 **B.    Excessive-Force Claim against Zavsza**

13    Carrillo has faced ongoing difficulty in naming the correct defendant for his excessive-force

14 claim.  His original complaint named a John Doe defendant as the individual who allegedly applied

15 pressure to his jaw, pushed his face and head against the wall, and yanked him by the hair.[50]  In

16 Carrillo's first amended complaint, he mistakenly named Sgt. K. Bussell as the male sergeant who

17

18 _____

   [43] Doc. 174-18 at 2; *see also* Doc. 174-7 at 3.

19
   [44] Doc. 155.
20
   [45] *Id.* at 15 (citing 28 U.S.C. § 1746; 18 U.S.C. § 1621).
21
   [46] *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (citing Fed. R. Civ. P. 56(e);
22 *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987) (per curiam); *Lew v. Kona Hosp.*, 754
   F.2d 1420, 1423 (9th Cir. 1985)).  The complaint also complies with 28 U.S.C. § 1746 because
23 Carrillo signs under penalty of perjury that it is true and correct.  Doc. 155 at 15.

24    [47] Doc. 185 at 6–8.

25    [48] *Id.*

26    [49] *Id.* at 8.

27    [50] Doc. 1 at 7, 9.

28                                        8

handled him inappropriately.[51]  After Carrillo learned that "Sgt. K. Bussell, it turns out, is a Ms. Sgt. Katherine Bussell," I granted his request to dismiss her as a defendant.[52]  Because Carrillo appears pro se, in the interest of the liberality required by the Ninth Circuit, I ordered Sheriff Gillespie to file a status update that informed the court whether he had "new information that might provide [Carrillo with] the name of any officer who had contact with Carrillo after the altercation between Carrillo and Hicks."[53]  When the Sheriff complied, his status update confirmed he had fully complied with his Rule 26 obligations by providing Carrillo with all relevant personnel identities and had no additional information about this alleged person's identity.[54]  Carrillo then picked another name from a list provided by defendants in discovery, and he amended (with leave of court) his complaint to target instead Sgt. Scott Zavsza.[55]

> **1.    *Carrillo Fails to Carry His Burden of Showing That Zavsza Is the Correct Defendant.***

Unfortunately for Carrillo, Sgt. Zavsza was not even at the RJC holding facility on the date of this alleged incident.  As Zavsza attests, he was working across the street that day at the Clark County Detention Center; a different sergeant was assigned to work in the court holding cell that day: Sgt. Kathryn Bussell.[56]  Zavsza's sworn testimony includes the following statements:

- "I was not present at any time during the Incident as described in the Second Amended Complaint."

- "Indeed, prior to an interview with the Internal Affairs Bureau ('IAB'), I was not even away of the Incident as described in the Second Amended Complaint."

---

[51] Doc. 49 at 2, 14.

[52] Doc. 84 at 1; Doc. 149 at 4–5.  Sgt. Bussell spells her first name "Kathryn," rather than "Katherine."  *See* Doc. 92 at 1.

[53] *Id.* at 149.

[54] Doc. 152 at 2.

[55] Doc. 155 at 2, 7, 11–12.

[56] Doc. 174-7 at 2--3.

- "In the Second Amended Complaint, Plaintiff claims that I tried to dislocate his jaw with his [sic] fingers, grabbed his hair, and slammed his head against the wall.  I did not do these things."[57]

Carrillo offers no evidence to refute Zavsa's sworn statements, leaving as uncontroverted facts that Zavsza is the wrong guy and could not have participated in the incident that gives rise to this lawsuit.

In his Citizen's Review Board complaint, Carrillo alleged that "a Metro Sgt[.]" harmed him.[58]  He did not identify the sergeant.[59]  During discovery, Carrillo also stated that "as a result of being battered, my EYEGLASSES were broken off my face.  So therefore [I] am unable to clearly identity anyone.  And my head was down."[60]  When asked to describe this alleged attacker, he states only "white male."  In sum, Carrillo has no personal knowledge of who might have attacked him.  And though he submits a sworn witness statement by Perez, this witness likewise omits the name of the offending officer, describing him "to be Mexican decent," and having "brownish black hair, brown eyes, had classes on[, and] about 5'10" to 5'11" feet tall," with "a light tan shirt and green pants."[61]  But nothing in the record connects this physical description with Sgt. Zavsza or any other individual.

Because Sgt. Zavsza has clearly testified that he did not attack Carrillo, was in a separate building when the incident allegedly occurred, and was unaware of the alleged attack until after it happened, Zavsza has satisfied his burden to show that he cannot be the correct defendant in this case.  The burden shifts to Carrillo, who does not respond with any evidence that places Sgt. Zavsza in court holding with him, much less in an altercation with him.  In sum, the burden shifted, Carrillo

---

[57] *Id.* at 4.

[58] Doc. 174-12 at 2.

[59] *See id.* at 2–3.

[60] Doc. 174-17 at 8.

[61] Doc. 185 at 8.

10

1    failed to satisfy it, and summary judgment is now warranted in Sgt. Zavsza's favor.[62]

2
3    **2.    *Carrillo Cannot Satisfy <u>Monell</u> to Sustain an Official-capacity Claim Against Zavzsa.***

4    To the extent that Carrillo pleads a claim against Sgt. Zavsza in his official capacity,

5    summary judgment is also appropriate on that theory.  When a municipal employee is sued in his

6    official capacity, the claim is essentially one against the municipality itself.[63]  Because there is no

7    respondeat superior liability under § 1983, the Supreme Court held in *Monell v. New York City*

8    *Department of Social Services* "that civil rights plaintiffs suing a municipal entity" like the police

9    department under § 1983 "must show that their injury was caused by a municipal policy or

10   custom."[64]  In short, *Monell* recognizes that "'a municipality cannot be held liable' solely for the acts

11   of others, e.g., 'solely because it employs a tortfeasor,'" but it "may be held liable 'when execution

12   of a government's policy or custom inflicts the injury.'"[65]  The policy or custom must be the moving

13   force behind the alleged constitutional violation.[66]

14   Carrillo never points to any evidence demonstrating that his alleged constitutional

15

16   _____

17   [62] Carrillo argues in his response brief that video surveillance footage of the holding-cell incident will support his claim and that "defendants are hiding all evidence that is to his favor and that can prove that he was assaulted."  Doc. 185 at 1.  Discovery closed December 3, 2013, nine

18   months before defendants filed this motion for summary judgment. Doc. 56.  Although FRCP 56(d) permits the court to defer summary judgment or take other appropriate action "[I]f a nonmovant

19   shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," Carrillo offers no rule-required declaration.  Nor does he explain why he has not

20   participated in any way in discovery.  *See, e.g.,* Doc. 174 at 8 (noting that Carrillo "**never** produced an initial Rule 26(f) Disclosure of Witnesses and Documents").  Indeed, the court denied his belated

21   requests to reopen discovery. *See* Doc. 129.  Because Carrillo has not complied with FRCP 56(d) or taken any other timely opportunities to obtain such evidence before the discovery cut off date, I

22   reject his argument that a videotape would create genuine issues of fact to support his claims.

23   [63] *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Larez v. Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).

24
25   [64] *L.A. Cnty., Cal. v. Humphries*, 562 U.S. 29, 30 (2010) (citing *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658 (1978)).

26   [65] *Id.* at 36 (quoting *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

27   [66] *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008).

28                                                    11

1   deprivation was the result of an LVMPD policy, practice, or custom.[67]  Thus, to the extent that

2   Carrillo sues Sgt. Zavsza in his official capacity,[68] the evidence plainly fails to support any

3   municipal-liability theory, and summary judgment on the claim against Sgt. Zavsza in his official

4   capacity is also granted, leaving no active claim pending against Sgt. Zavsza.

5   **C.      Supervisory Claim against Sheriff Gillespie**

6          Carrillo claims that Sheriff Gillespie is "responsible for the daily administration of" the

7   CCDC and LVMPD and the protection of inmates, but he has failed in this responsibility

8   demonstrating a deliberate indifference to the inmates' safety, security, health, and welfare with a

9   "policy or custom to impunitively punish drop out gang members as penalty."[69]  Carrillo claims he

10  sues Gillespie in his individual and official capacities.[70]

11         Like Sgt. Zavsza, Sheriff Gillespie is entitled to summary judgment because Carrillo has

12  offered no evidence to support a claim against him.[71]  There is no allegation—let alone

13  evidence—that Sheriff Gillespie was personally involved in the incident Carrillo claims occurred at

14  the RJC, so this claim can only be alleged against Gillespie in his supervisory capacity.  "A plaintiff

15  may state a claim against a supervisor for deliberate indifference based upon the supervisor's

16  knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."[72]  For

17  supervisory liability to attach, the defendant must have been personally involved in the constitutional

18

19         [67] *See generally* Doc. 155.

20         [68] Doc. 155 at 2.

21         [69] Doc. 155 at 9–10, 12.

22         [70] *See* Doc. 174-15 at 2, 8–10.

23

24         [71] Because I grant summary judgment on the basis that there are no genuine issues of fact to
    preclude summary judgment on any remaining claim, I do not reach defendants' exhaustion-of-
    remedies argument.  However, were I to consider that argument, and because Carrillo has offered no
25  new points in response to this argument, I would likely conclude consistently with my order finding
    that the claims against Cotwright, Diaz, and Neven were barred as unexhausted.  *See* Doc. 149 at
26  8–10.

27         [72] *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).

28                                                      12

1    deprivation or there must be a sufficient causal connection between the supervisor's wrongful

2    conduct and the constitutional violation.[73]

3         Carrillo points to no evidence to personally connect Gillespie to his experience in the holding

4    cell.  He merely alleges that "defendant LVMPD . . . officials" (which I construe liberally to include

5    Gillespie) had a "policy or custom to impunitively punish drop out gang members as penalty."[74]  But

6    he offers no evidence of this policy or custom.  On this evidentiary record, Carrillo simply cannot

7    sustain any claim against Sheriff Gillespie.

8    **D.    Dismissal of Claims against Defendants Cotwright, Diaz, and Neven**

9         I conclude by amending my prior order to the extent it dismissed—and did not grant

10   summary judgment on—Carrillo's claims against defendants Cotwright, Diaz, and Neven.[75]  These

11   defendants had moved for dismissal of or, alternatively, summary judgment on, these claims based

12   on Carrillo's failure to first exhaust his prison's grievance procedures as required by the Prison

13   Litigation Reform Act.[76]  I found that the "undisputed evidence show[ed] that Carrillo ha[d] wholly

14   failed to comply with the PLRA's exhaustion requirement, but I followed the guidance of the Ninth

15   Circuit's decision in *Wyatt v. Terhune*[77] and construed the request as one for dismissal under the

16   unenumerated portions of Rule 12(b) and not one for summary judgment.  I thus ordered the claims

17   against these defendants "dismissed without prejudice."[78]

18        Five days after my dismissal, the Ninth Circuit reversed *Wyatt* in *Albino v. Baca*,[79] reasoning,

19   _____

20        [73] *Id.*

21        [74] Doc. 155 at 12.

22        [75] *See* Doc. 149. "Courts have inherent power to modify their interlocutory orders before
     entering a final judgment." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989); Fed.
23   R. Civ. P. 54(b).

24        [76] Doc. 63.

25        [77] *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003).

26        [78] Doc. 149 at 16.

27        [79] *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir., Apr. 3, 2014).

28                                        13

1    "We conclude that *Wyatt* is no longer good law . . . (if it ever was good law), and that we should treat

2    an exhaustion defense under the PLRA within the framework of the Federal Rules of Civil

3    Procedure."  In light of *Albino*, I now revisit my dismissal of these claims against Cotwright, Diaz,

4    and Neven, and conclude that it should instead have been a summary adjudication in favor of these

5    defendants because my analysis employed the higher summary-judgment standards anyway.

6    Accordingly, I vacate my order (Doc. 149) to the extent it relied on *Wyatt* and dismissed without

7    prejudice the claims against Cotwright, Diaz, and Neven.  Instead, I now enter summary judgment on

8    these claims in favor of these defendants and against Carrillo.

9                                         **Conclusion**

10        Accordingly, and for good cause appearing and no reason to delay,

11        It is hereby ORDERED, ADJUDGED, and DECREED that:

12    •    Defendants Douglas Gillespie and Scott Zavsza's motion for summary judgment

13         **[Doc. 174] is GRANTED.**  Judgment is entered in favor of Zavsa and Gillespie and

14         against plaintiff Gilberto Carrillo; and

15    •    My order dismissing Carrillo's claims against defendants Cotwright, Diaz, and Neven

16         **[Doc. 149] is vacated in part** to the extent that the claims were dismissed without

17         prejudice; instead, judgment on those claims is hereby entered in favor of defendants

18         Cotwright, Diaz, and Neven.

19        Because the entry of judgment on these claims terminates this suit, the Clerk of Court is

20    instructed to **CLOSE** this case.

21        DATED March 31, 2015.

22

23    _____

24    Jennifer A. Dorsey
      United States District Judge

25

26

27

28                                       14